UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

Denissia Kelley,

      Plaintiff,

vs.                                                                                        Case No.  3:09-cv-881-J-MCR

MICHAEL ASTRUE, Commissioner of the
Social Security Administration,

      Defendant.
_____/

**MEMORANDUM OPINION AND ORDER**[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits.  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons set forth herein, the Commissioner's decision is **REVERSED** and **REMANDED** for proceedings not inconsistent with this opinion.

**I.  PROCEDURAL HISTORY**

Plaintiff filed an application for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI") on May 15, 2007, alleging an inability to work since September 15, 2005 (Tr. 131).  The Social Security Administration ("SSA") denied Plaintiff's claim initially and upon reconsideration.  (Tr. 59-63).  Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ") on December 13, 2007.  (Tr. 64).  The hearing took place on February 18, 2009 in

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Doc. 15).

Jacksonville, Florida. (Tr. 11). The ALJ issued an unfavorable decision on April 6, 2009. (Tr. 8-22). The Appeals Council ("AC") denied Plaintiff's request for review on July 10, 2009. (Tr. 1-3). Plaintiff now seeks judicial review of the ALJ's final decision under 42 U.S.C. § 405(g).

## II.   NATURE OF DISABILITY CLAIM

### A.   Basis of Claimed Disability

Plaintiff claims to be disabled since September 15, 2005 due to right wrist injury, shoulder problems, back problems, and hip problems. (Doc. 14, p. 2; Tr. 29-30, 32-34).

### B.   Summary of Applicable Evidence Before the ALJ

Plaintiff was 49 years of age at the time the ALJ conducted the February 18, 2009 administrative hearing. (Tr. 26). Plaintiff has a tenth grade education and past relevant work experience as a bagger in a factory and a potato picker on a farm. (Tr. 137, 140).

Plaintiff claims to be disabled since September 15, 2005 due to right wrist injury, shoulder problems, back problems, and hip problems. (Doc. 14, p. 2; Tr. 29-30, 32-34, 136). As this appeal deals primarily with Plaintiff's right wrist injury, the Court will limit its discussion to the medical evidence regarding that condition.

Plaintiff suffered a work-related injury to her right wrist in June 2003. (Tr. 29). Since then, Plaintiff has undergone conservative treatment for chronic right wrist pain with Dr. Albert Volk at Orthopaedic Associates of St. Augustine. (Tr.187-258). Plaintiff first visited Dr. Volk in September 2003 complaining of progressive pain in both hands and forearms, particularly on the right side, and intermittent numbness in her fingers,

which was causing her to drop things. (Tr. 191). Dr. Volk assessed her with "bilateral carpal tunnel syndrome, worse right than left," and prescribed night splints. (Tr. 191). At a follow-up appointment the next week, Electromyography ("EMG") and Nerve Conduction Velocity ("NCV") tests returned normal results. (Tr. 192). Dr. Volk assessed Plaintiff with bilateral wrist synovitis and recommended an anti-inflammatory. (Tr. 192). In November 2003, Plaintiff again complained of pain and stiffness in her hands. (Tr. 193). The doctor noted, "[s]he also says that anytime she does repetitive activity such as doing the dishes, it bothers her." (Tr. 193). Dr. Volk again diagnosed Plaintiff with bilateral wrist synovitis and possible early carpal tunnel syndrome. (Tr. 193). As treatment, Dr. Volk injected her wrist with cortisone. (Tr. 193).

Plaintiff continued to visit Dr. Volk complaining of right wrist pain with activity in July, August, and September 2004. (Tr. 195-97). Dr. Volk diagnosed her with "overuse syndrome" and recommended conservative treatment. (Tr. 196). He did not place any restrictions upon her work status at that time. (Tr. 195). In December 2004, Plaintiff complained her wrist became so stiff, swollen, and painful that she could not use it. (Tr. 198). Dr. Volk noted there was swelling and a decreased range of motion, but an MRI showed unremarkable findings. (Tr. 198). Dr. Volk gave Plaintiff an inter-articular cortisone injection. (Tr. 198).

In March 2005, Plaintiff again complained of wrist pain with activity. Dr. Volk noted tenderness, but no swelling or instability. (Tr. 199). The doctor reported, "I think if she avoids any repetitive activity she would do well. Recommend activity as tolerated, except for repetitive activity." (Tr. 199). However, at a subsequent appointment in May 2005, Dr. Volk did not place any restrictions on Plaintiff's work status. (Tr. 200). When

Plaintiff returned to Dr. Volk in June 2005, he recommended surgical intervention in the form of a right wrist arthroscopy because cortisone injections, activity modification, and splinting had failed.  (Tr. 201-02).  However, Plaintiff declined to have surgery.  (Tr. 202).  Plaintiff stated her wrist mainly hurt with repetitive activity and if she varied or changed the activity, then the pain improved.  (Tr. 202).  Dr. Volk noted Plaintiff had a permanent impairment rating of three percent as related to her wrist, and he advised Plaintiff to avoid repetitive activity and lifting over 50 pounds.  (Tr. 202).

   Plaintiff next visited Dr. Volk in February 2006, where she received an intra-articular cortisone injection and was advised to avoid repetitive activity.  (Tr. 203).  One year later, in February 2007, after several further appointments regarding right wrist pain, Dr. Volk limited Plaintiff to "no overhead activity, repetitive activity, or lifting over 15 pounds."  (Tr. 187).  He then referred Plaintiff to a hand surgeon, Dr. John Stark.  (Tr. 187).  Plaintiff met with Dr. Stark in May 2007.  (Tr. 184).  Plaintiff rated her pain in her wrist as 4 to 5 out of 10.  (Tr. 184).  Plaintiff reported she experienced aching and burning.  (Tr. 184).  Radiographs of the right wrist showed "VISI deformity with cystic mass of the triquetrum and arthritic changes at the lunotriquetral junction."  (Tr. 184-85).  Dr. Stark told Plaintiff she could either live with the condition or have corrective surgery.  (Tr. 186).  Dr. Stark considered Plaintiff a good candidate for a proximal row carpectomy.  (Tr. 186).  Plaintiff told Dr. Stark she did not wish to pursue surgery.  (Tr. 186).  Dr. Stark noted in his report, "[i]n terms of work, she can work with an as tolerated use of the hand.  If she needs a splint for heavier lifting that would be appropriate."  (Tr. 186).  At Plaintiff's next appointment with Dr. Volk in December 2007, he noted "her wrist and hand are doing somewhat better."  (Tr. 252).

In July 2007, state agency medical consultant, Dr. Deborah Rinella, reviewed Plaintiff's medical records. (Tr. 259-66). Dr. Rinella assessed Plaintiff with limitations in pushing and pulling with her upper extremities. (Tr. 260). Dr. Rinella did not determine whether Plaintiff had limited or unlimited abilities in handling, fingering, or feeling. (Tr. 262). However, she noted Plaintiff could work "as tolerated by use of hand" and could "use a splint for heavier lifting." (Tr. 260). Plaintiff's medical records were also reviewed by state agency medical consultant, Dr. Donald Morford, in November 2007. (Tr. 267-74). Dr. Morford assessed Plaintiff with limitations in pushing and pulling with her upper extremities, and in reaching, handling, and fingering. (Tr. 268, 270). He noted, "[i]n terms of work she can work with an as tolerated use of the hand." He limited Plaintiff to "occasional to frequent use of the right hand, and avoidance of extremes." (Tr. 269, 270).

At the administrative hearing before the ALJ, Plaintiff testified she felt a sharp pain in her right wrist when exposed to cold temperatures. (Tr. 30). She also testified she could not grasp or hold items for long periods of time and she sometimes dropped items when carrying them. (Tr. 30, 36). Plaintiff stated she sometimes wore a splint at night, which helped to ease the pain by holding the wrist still. (Tr. 30). Plaintiff has not had surgery because she was trying to see if she could endure the pain using medication. (Tr. 31, 33). Plaintiff was taking Ibuprofen and over-the-counter aspirins for pain. (Tr. 31, 44). Plaintiff testified she had difficulty driving because she had to constantly switch wrists. (Tr. 38). Plaintiff also testified she had trouble gardening and mowing the lawn because of the pain in her wrist. (Tr. 45).

### C. <u>Summary of the ALJ's Decision</u>

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In this case, the ALJ determined Plaintiff met the nondisability requirements of the Act and was insured for benefits through December 31, 2010. (Tr. 14). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date of September 15, 2005. Id. At step two, the ALJ found Plaintiff had the

following severe impairments: status post bilateral shoulder surgeries, status post wrist injury, and disc degeneration. Id.  At step three, the ALJ determined Plaintiff did not have an impairment that met or equaled any of the impairments listed in Appendix 1, Subpart P of Regulation No. 4.  Id.

The ALJ further determined Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 CRF 404.1567(b).  (Tr. 15).  Specifically, the ALJ found Plaintiff was able to:

> Occasionally lift 20 pounds and frequently 10 pounds.  She can sit for a total of six hours in an eight-hour workday at a rate of one hour at a time before standing up to loosen up for one or two minutes.  The claimant can stand and/or walk for a total of six hours in an eight-hour workday at a rate of one hour at a time.  She can occasionally bend, stoop, kneel, and crouch but never crawl.  The claimant can climb stairs and ladders occasionally but never ropes or scaffolds.  She cannot use vibrating tools and occasionally can reach above shoulder level on the left and right sides.

Id.

At step four, the ALJ utilized the testimony of a vocational expert ("VE") during the hearing to determine if Plaintiff could perform any of her past relevant work.  (Tr. 19-20).  The VE explained Plaintiff could not perform any of her past work.  (Tr. 20).  Accordingly, the ALJ proceeded to step five and asked the VE whether Plaintiff could perform other work existing in the national economy.  (Tr.20-21).  The VE testified Plaintiff could perform occupations such as an office helper, a router, and a ticket seller. (Tr. 21).  Therefore, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. 22).

### III. ANALYSIS

#### A. <u>The Standard of Review</u>

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, <u>McRoberts v. Bowen</u>, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. <u>Richardson v. Perales</u>, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (<u>citing</u> <u>Walden v. Schweiker</u>, 672 F.2d 835, 838 (11th Cir. 1982) and <u>Richardson</u>, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. <u>Edwards v. Sullivan</u>, 937 F.2d 580, 584 n.3 (11th Cir. 1991); <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. <u>Foote</u>, 67 F.3d at 1560; <u>accord</u>, <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992) (explaining how the court must scrutinize the entire record to determine reasonableness of factual findings).

The district court will reverse a Commissioner's decision on plenary review, however, if the decision applies incorrect law, or if the decision fails to provide the

district court with sufficient reasoning to determine the Commissioner properly applied the law. Keeton v. Dep't of Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

### B. Issue on Appeal

Plaintiff argues one issue on appeal. Plaintiff contends the ALJ erred by failing to include all of Plaintiff's impairments in the hypothetical presented to the VE. (Doc. 14, p. 6). Specifically, Plaintiff alleges the ALJ failed to include any limitations with regard to her right wrist injury. (Doc. 14, p. 7).

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson v. Barnhard, 284 F.3d 1219, 1227 (11th Cir. 2002) (citing Jones v. Apfel, 190 F.3d 1224, 1230 (11th Cir. 1999), cert. denied, 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000)). However, an ALJ is not required to include in a hypothetical question, limitations that are not supported by the record or limitations the ALJ properly rejected. Bouie v. Astrue, 226 F. App'x. 892, 894 (11th Cir. 2007) (quoting Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir. 2004)). "The ALJ is only required to pose those limitations he finds severe in the hypothetical to the expert." Williams v. Astrue, No. 5:06CV221/RS-AK, 2008 WL 222683, at *8 (N.D. Fla. Jan. 25, 2008) (citing Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985)). Thus, an ALJ's failure to include a claimant's severe impairments in a hypothetical question to a VE constitutes reversible error where the ALJ relied on that VE's testimony to make a disability determination. Pendley, 767 F.2d at 1563.

In Dunaway v. Astrue, the ALJ found Plaintiff's "hearing loss of the left ear" to be a

severe impairment. Dunaway v. Astrue, No. 8:06-CV-1567-T-EAJ, 2008 WL 1897603, at *5 (M.D. Fla. April 28, 2008). However, the ALJ did not include any information about that impairment in the hypotheticals posed to the VE. Id. at *5. In his opinion, the ALJ noted, "despite 'poor hearing' in the Plaintiff's left ear, Plaintiff was still able to sustain employment." Id. at *7 n.9. The court remanded the case for further administrative proceedings. Id. at *7. "Because the ALJ found Plaintiff's hearing loss in his left ear to be a severe impairment but did not specify any functional limitations resulting from his impairment, the hypothetical question posed to the VE was incomplete." Id. The court further noted, "[b]y definition, a severe impairment poses work-related restrictions." Id. at *7 n.9 (citing Brady v. Heckler, 724 F.2d 914, 902 (11th Cir. 1984)).

In the instant case, the ALJ posed the following hypothetical to the VE:

> I want you to assume a 49-year-old individual with the work background and education as testified to by the claimant. I want you to assume that the individual can sit up to six hours per day, up to one hour without interruption. At least once per hour they would need one or two minutes they could stand up and loosen up for one or two minutes. I want you to assume the individual can stand or walk up to six hours per day, up to one hour at a time. I want you to assume the individual can lift up to 20 pounds occasionally and 10 pounds frequently. Occasional bending, stooping, no crawling; occasional stairs; occasional ladders; no ropes or scaffolds; occasional crouching; occasional kneeling; occasional reaching above should level, that would be with both right and left. No use of vibrating tools.

(Tr. 46-47). In response to the hypothetical, the VE determined the individual would not be able to return to Plaintiff's past relevant work. (Tr. 325). However, the VE found the hypothetical individual would be able to perform other jobs such as office helper, router, and ticket seller. Id.

Plaintiff is correct that the hypothetical presented to the VE does not appear to impose any functional or manipulative limitations with regard to her right wrist or hand. The hypothetical does not reference any limitations with the right hand with respect to reaching, handling, fingering, pushing, or pulling. This omission is at odds with the record and the ALJ's finding of severity regarding Plaintiff's wrist injury. After listing Plaintiff's severe impairments, including status post wrist injury, the ALJ explained, "[t]he above impairments are 'severe' within the meaning of the Regulations because they cause significant limitations in the claimant's ability to perform some basic work activities." (Tr. 14). Therefore, the ALJ should have included some limitation arising from Plaintiff's right wrist injury in the hypothetical question posed to the VE.

The ALJ found Plaintiff suffered from the severe impairment of right wrist injury and this condition is supported by the record. (Tr.187-258). Over the course of four years, Plaintiff was treated by orthopaedic surgeons for chronic right wrist pain and was considered a candidate for a proximal row carpectomy. (Tr. Tr.184-258). Plaintiff testified she had trouble working with her hands and grasping objects for long periods of time. (Tr. 30, 36, 38, 45). Further, Plaintiff's treating physicians and the state agency's consulting physicians all acknowledged Plaintiff had some limitations in the use of her right hand, including: no repetitive activity; no overhead activity; limitations with pushing and pulling; and limitations with reaching, handling, and fingering. (Tr. 184, 187, 199, 202, 203, 260, 269-70). The ALJ did not reject, or even address these limitations.

If Plaintiff's right wrist injury was severe, then it must have imposed some work-related restrictions. See Dunaway, 2008 WL 1897603, at *7 n.9. These restrictions must be included in the hypothetical presented to the VE for the VE's testimony to

constitute substantial evidence to support the ALJ's decision. See Wilson, 284 F.3d at 1227. In the instant case, the three jobs which the VE identified as available for the hypothetical person presented by the ALJ are office helper, router, and ticket seller. According to the Dictionary of Occupational Titles ("DOT"), the office helper position requires frequent reaching, handling, fingering. DOT, Vol. 11, 4th Ed. (available online at DICOT 239.567-010). The router position requires frequent reaching and handling, with occasional fingering. Id. (available online at DICOT 222.587-038). The ticket seller position requires constant reaching, handling, and fingering.[2] Id. (available online at DICOT 211.467-030). Plaintiff may or may not have the ability to perform constant or frequent reaching and handling given her right wrist injury, and the VE's opinion regarding Plaintiff's ability to perform work available in the national economy might change if presented with information about her right wrist injury in the hypothetical.

Because the ALJ found Plaintiff's right wrist injury to be a severe impairment but did not specify any functional limitations resulting from this impairment, the hypothetical question posed to the VE was incomplete. Without additional findings at the administrative level, the Court is unable to conclude that substantial evidence supports the decision denying disability benefits. On remand, the ALJ shall specify the functional limitations from Plaintiff's right wrist injury, incorporate these limitations in determining Plaintiff's RFC, and obtain VE testimony as to whether there are jobs in the national economy Plaintiff can perform consistent with these limitations.

---

[2] According to the DOT, occasional activities or conditions exist up to one-third of the time. Frequent activities or conditions exist from one-third to two-thirds of the time. Constant activities or conditions exist two-thirds of the time or more. DOT, Vol. 11, 4th Ed. (available online at SCODICOT App C).

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is hereby **REVERSED** and **REMANDED** pursuant to sentence four, 42 U.S.C. 405(g).  On remand, the ALJ shall (1) specify the functional limitations from Plaintiff's right wrist injury, (2) incorporate those limitations in determining Plaintiff's RFC, (3) obtain VE testimony as to whether there are jobs in the national economy Plaintiff can perform consistent with these limitations, and (4) conduct any other proceedings deemed appropriate.  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

Should this remand result in the award of benefits, Plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days after the date of the notice of award of benefits from the Social Security Administration. **This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.**

**DONE AND ORDERED** at Jacksonville, Florida, this  30th  day of August, 2010.

*Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record